Filed 5/16/22  In re Isaiah B. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| In re Isaiah B., a Person Coming Under the Juvenile Court Law. | B313578<br><br>(Los Angeles County Super. Ct.  No. DK23300B |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>          Plaintiff and Respondent,<br><br>          v.<br><br>E.T.,<br>          Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

David M. Yorton, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

E.T., mother of now-eight-year-old Isaiah B., appeals the juvenile court's May 13, 2021 order denying her request for reinstatement of family reunification services (Welf. & Inst. Code, § 388)[1] and the court's order the same day terminating parental rights (§ 366.26). E.T. contends the court erred in concluding additional reunification services were not in Isaiah's best interest and the beneficial parent-child relationship exception to termination (§ 366.26, subd. (c)(1)(B)(i)) did not apply. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *The Sustained Section 300 Petition and Disposition*

On January 16, 2018, following E.T.'s no contest plea, the juvenile court sustained a first amended section 300 petition, finding three-year-old Isaiah and his older brother, 11-year-old Matthew, were at substantial risk of serious physical harm inflicted nonaccidentally (§ 300, subds. (a), (j)) after E.T. used excessive corporal punishment on Isaiah.[2] In particular, the court found that, in disciplining Isaiah after he ran away from E.T. during an outing, E.T. grabbed Isaiah by his shirt, picked him up and slammed him to the ground, causing pain to his head. She was restrained by a bystander and arrested for felony child endangerment. The court also found true allegations that E.T. had a history of substance abuse, including alcohol and marijuana, and was a current abuser of marijuana and that her

---

[1] Statutory references are to this code.

[2] Because Matthew is not the subject of E.T.'s appeal, we refer to him only occasionally.

substance abuse placed both children at substantial risk of serious physical harm (§300, subd. (b)).[3]

At the contested February 14, 2018 disposition hearing, the court declared Isaiah and Matthew dependent children of the court, removed them from parental custody, and placed them under the care and supervision of the Los Angeles County Department of Children and Family Services for suitable placement. The court ordered family reunification services for E.T., including four on-demand consecutive drug tests, a full drug/alcohol program if she missed or failed any test, completion of a one-year parenting program, and individual counseling to address anger management and child discipline. It limited E.T. to monitored visitation, granting the Department discretion to liberalize visits.

2. *The Review Hearings*

At the six-month review hearing (§ 366.21, subd. (e)) on August 15, 2018, the court found E.T. in partial compliance with her case plan and continued family reunification services, this time with unmonitored visitation and discretion to the Department to liberalize with overnight visits. The court ordered that Isaiah was to have no contact with E.T.'s then-boyfriend, Frederick Y., until Frederick submitted to a criminal background check and the court approved the contact.[4]

---

[3]    The petition also alleged Isaiah's father, who was incarcerated, had an extensive criminal history, including violent crimes and drug offenses.

[4]    E.T. told the social worker she had not wanted to "put Frederick" through the burden of submitting to a criminal background check.

At the 12-month review hearing (§ 366.21, subd. (f)) on May 14, 2019, the Department reported E.T. was in substantial compliance with her case plan, but questioned whether she had learned anything from her programs.  The Department stated that E.T. was quick to anger during wraparound sessions in her home and unable to adjust, either on her own or when assisted by a wraparound services parent partner.  The Department also informed the court E.T. had been somewhat inconsistent in visiting with Isaiah.  The Department recommended reunification services be terminated.

The court found E.T.'s compliance with her case plan substantial and, over the Department's objection, ordered Isaiah (and Matthew) returned to E.T.'s custody with family maintenance services.  The court ordered E.T. to drug and alcohol test "on demand with reasonable suspicion," to attend group anger management, to complete her one-year parenting course as ordered by the criminal court when it sentenced her in the child endangerment case, and to make Isaiah available for unannounced visits by the Department.  The court ordered E.T. "not to allow" her children to have any contact with Frederick until Frederick submitted to a criminal background check and was cleared by the Department.  The court set a section 364 review hearing for November 13, 2019.

3. *The Section 342 Subsequent Petition, Section 387 Supplemental Petition and Isaiah's Redetention*

On October 31, 2019 the Department filed a section 342 subsequent petition alleging E.T. and Frederick had a history of violent altercations in the children's presence; on October 24, 2019 Frederick struck E.T. in the face and stomach while she was pregnant; and E.T. was a current abuser of

4

marijuana and alcohol whose substance abuse rendered her incapable of providing regular care and supervision for her children. The Department contemporaneously filed a section 387 supplemental petition alleging the court's prior order was ineffective in protecting Isaiah: E.T. had physically abused Isaiah in October 2019 by striking him on the face, leg and all over his body; failed to submit to random drug testing; and failed to make Isaiah available for the Department's unannounced home visits despite the court's order.

According to the Department's report prepared for the detention hearing, Isaiah and his brother observed drug and alcohol use by E.T. and Frederick in the children's presence, and E.T. "added black rocks" and sometimes "white stuff" to her cigarette. Isaiah reported his mother "gets mad" and hits him "everywhere, 100 times" with an open hand. Matthew confirmed E.T. hit Isaiah. Isaiah was not afraid of E.T; he was afraid of Frederick, whom he observed hitting E.T., and did not want Frederick to pick him up from school. Matthew reported that, when E.T. was under the influence of alcohol, he would have to take care of her and prevent her "from doing anything stupid." When the social worker interviewed E.T., the social worker observed her to be under the influence of alcohol. Wraparound team members also reported E.T. being under the influence of alcohol on several occasions.

The court ordered Isaiah and his brother detained from E.T. and placed in the temporary custody of the Department with monitored visitation for E.T.

### 4. *Jurisdiction Hearing on the Subsequent and Supplemental Dependency Petitions*

At the December 4, 2019 jurisdiction hearing the court sustained the new counts of physical abuse and failure-to-protect in both the section 342 subsequent petition and the section 387 subsequent petition, found by clear and convincing evidence that removal was necessary to protect Isaiah and his sibling, terminated family reunification services for both parents and set a section 366.26 hearing for April 1, 2020 to consider terminating parental rights. The court ordered monitored visitation for E.T.

### 5. *E.T.'s Section 388 Petition and Hearing and the Section 366.26 Selection and Implementation Hearing*

The section 366.26 hearing, continued numerous times, occurred on April 30, 2021. On April 29, 2021 E.T. filed a section 388 petition seeking reinstatement of family reunification services and/or return of E.T. to her custody. The court continued the section 366.26 hearing to May 13, 2021 and set a hearing on E.T.'s section 388 petition for the same date.

At the section 388 hearing E.T. and her counsel orally modified E.T.'s section 388 petition to request reinstatement of reunification services while E.T. completed an alcohol program, not a return of Isaiah to her custody. E.T. testified she had completed a domestic violence/restorative justice class and learned techniques to manage anger without violence. She also completed a six-month drug and alcohol class and learned about a 12-step program, although she acknowledged she needed, but never had, a sponsor, did not formally do the 12-steps and still required a formal program to effectively address her alcoholism. E.T. asserted she had not used alcohol or any drugs since February 2020 when she was arrested for driving under the

influence. (E.T. insisted she had not been driving at the time; she was homeless and had been sleeping in her car when arrested.) She realized she could not keep "doing this to her kids" and needed help. She explained she was currently in individual counseling—she had attended eight sessions since February 2021—and said it was helping her. She had not been able to start individual counseling sooner because programs were difficult to find during the height of the COVID-19 pandemic. Her failure to see Isaiah in more than a year, she asserted, was because of a lack of available visitation sites during the pandemic, a claim the Department disputed. E.T. also found it difficult working with Isaiah's prospective adoptive parent to reschedule visits when necessary. E.T. talked with Isaiah on the telephone regularly and insisted they shared a familial bond. Isaiah referred to her as "mommy."

The Department and Isaiah's counsel urged the court to deny E.T.'s section 388 petition. Both advised the court E.T. had not visited Isaiah regularly; E.T. cancelled visits and then failed to reschedule despite requests by the prospective adoptive parent for E.T. to call back for that purpose. Although E.T. seemed to be taking action to address her sobriety and anger issues, she had not kept her word in the past; and Isaiah needed permanency and stability. Moreover, Isaiah's counsel argued, Isaiah's therapist observed Isaiah frequently destabilized after being with E.T. and when she failed to keep her visitation dates. Meanwhile, Isaiah was thriving in the care of his prospective adoptive parent. Isaiah reported he wanted to remain with his prospective adoptive parent but did not want to be adopted if that meant losing contact with E.T.

The court commended E.T. for her honesty with the court, her insight into her alcohol problem and her recent efforts toward addressing her anger management and sobriety; it also agreed with E.T., despite the Department's contrary argument, that circumstances had changed since December 4, 2019 when it had terminated her family reunification services. However, the court found reinstatement of family reunification services was not in Isaiah's best interest for all the reasons the Department and Isaiah's counsel identified. Accordingly, the court denied the section 388 petition.

Proceeding directly to the section 366.26 hearing and incorporating the testimony from the section 388 hearing, the court terminated parental rights after finding the beneficial parent-child relationship exception to termination did not apply. Although it was clear to the court that Isaiah was protective of E.T. and loved her, the court found that any bond they shared did not outweigh the benefits of stability and permanency that Isaiah would receive with his prospective adoptive family: "[W]hen we look at the mere possibility that mom might be able to do what needs to be done versus the stability of the home that he's in, I have to come down on the side of stability."

## DISCUSSION

1. *The Court Did Not Err in Denying E.T.'s Section 388 Petition*
    a. *Governing law and standard of review*

Section 388 provides for modification of juvenile court orders when the moving party (1) presents new evidence or a change of circumstance and (2) demonstrates modification of the previous order is in the child's best interest. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415; *In re Stephanie M.* (1994) 7 Cal.4th

295, 317; *In re Y.M.* (2012) 207 Cal.App.4th 892, 919; see Cal. Rules of Court, rule 5.570(e); see also *In re Zacharia D.* (1993) 6 Cal.4th 435, 455 ["'[s]ection 388 provides the "escape mechanism" that . . . must be built into the process to allow the court to consider new information'"].)

When, as here, a section 388 petition is filed after family reunification services have been terminated, the juvenile court's overriding concern is the child's best interest. (*In re Stephanie M., supra*, 7 Cal.4th at p. 317.) The parent's interests in the care, custody and companionship of the child are no longer paramount; and the focus shifts to the needs of the child for permanency and stability. (*Ibid.*; *In re Malick T.* (2022) 73 Cal.App.5th 1109, 1123.) Nonetheless, a parent may rebut the presumption that, once family reunification services have been terminated, reunification is not in the best interest of the child by showing that circumstances have changed and that the best interest of the child warrants further reunification services. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309; *Stephanie M.,* at p. 317.)

"[B]est interests is a complex idea" that requires consideration of a variety of factors. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531; see *In re Jacob P.* (2007) 157 Cal.App.4th 819, 832-833.) In determining whether a section 388 petitioner has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case, including factors such as the seriousness of the reason leading to the child's removal, the reason the problem was not resolved, the passage of time since the child's removal, the relative strength of the bonds with the child, the nature of the change of circumstance, and the reason the change was not made

9

sooner.  (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 616; *In re Aaliyah R.* (2006) 136 Cal.App.4th 437, 446-447; *In re Justice P.* (2004) 123 Cal.App.4th 181, 188-189.)

We review the court's decision to grant or deny a section 388 petition based on its best interest finding for abuse of discretion and may disturb the exercise of that discretion only in the rare case when the court has made an arbitrary or irrational determination.  (*In re Stephanie M., supra*, 7 Cal.4th at pp. 318-319; *In re Malick T., supra,* 73 Cal.App.5th at p. 1123; *In re I.B.* (2020) 53 Cal.App.5th 133, 153.)  We do not inquire whether substantial evidence supports the order, nor do we reweigh the evidence and substitute our judgment for that of the juvenile court.  (*Stephanie M.*, at pp. 318-319.)  We ask only whether the juvenile court abused its discretion with respect to the order it actually made.  (*In re M.H.* (2018) 21 Cal.App.5th 1296, 1305.)

> b. *The court did not abuse its discretion in*
> *concluding reinstatement of reunification services*
> *was not in Isaiah's best interest*

E.T. contends the court abused its discretion in determining reinstatement of family reunification services was not in Isaiah's best interest.  She observes the reason for the dependency was "a single incident" of corporal punishment that she resorted to in a moment of panic when Isaiah ran away from her in a public setting.  That overly simplistic characterization of events, however, ignores not only E.T.'s acknowledged alcohol abuse, but also the troubling incidents that occurred within months of Isaiah's return to her custody, including her disregard of court orders to keep Isaiah away from Frederick, which led to Isaiah witnessing incidents of domestic violence; E.T.'s infliction of additional physical abuse on Isaiah; and numerous other

10

occasions when she was under the influence of alcohol when the children were in her custody, as reported by both the children and members of her wraparound team. To be sure, the court found circumstances had changed since it terminated family reunification services nearly one year earlier: E.T. had appeared to gain insight into her alcoholism as a disease that required treatment, Frederick was no longer in E.T.'s life, and E.T. had expressed a renewed and sincere commitment to doing whatever was necessary to regain custody of Isaiah. However, the court determined that E.T.'s history, including the very recent, and limited, nature of her efforts to address her alcoholism in the more than one year since family reunification services were terminated, while commendable, was too little, too late. The potential for reunification if additional family reunification services were ordered, the court found, was simply too speculative to risk Isaiah's stability. (See *In re Marilyn H., supra*, 5 Cal.4th at p. 310 ["[c]hildhood does not wait for the parent to become adequate"].) E.T. disagrees with that finding, but it was well within the court's discretion.

2. *The Court Did Not Err in Concluding the Beneficial Parent-child Relationship Exception to Termination Did Not Apply*

a. *Governing law and standard of review*

The express purpose of a section 366.26 hearing is "to provide stable, permanent homes" for dependent children. (§ 366.26, subd. (b).) Once the court has decided to end parent-child reunification services, the legislative preference is for adoption. (§ 366.26, subd. (b)(1); *In re S.B.* (2009) 46 Cal.4th 529, 532 ["[i]f adoption is likely, the court is required to terminate parental rights, unless specified circumstances compel a finding that termination would be detrimental to the child"].)

Section 366.26 requires the juvenile court to conduct a two-part inquiry at the selection and implementation hearing. First, it determines whether there is clear and convincing evidence the child is likely to be adopted within a reasonable time. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249-250; *In re D.M.* (2012) 205 Cal.App.4th 283, 290.) Then, if the court finds by clear and convincing evidence the child is likely to be adopted, the statute mandates judicial termination of parental rights unless the parent opposing termination can demonstrate one of the enumerated statutory exceptions applies. (§ 366.26, subd. (c)(1)(A) & (B); see *In re Caden C.* (2021) 11 Cal.5th 614, 630.)

One of the statutory exceptions to termination is contained in section 366.26, subdivision (c)(1)(B)(i), which permits the court to order some other permanent plan if "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." The exception requires the parent to establish, by a preponderance of the evidence, (1) the parent has maintained regular visitation and contact with the child, "taking into account the extent of visitation permitted"; (2) the child has a substantial, positive, emotional attachment to the parent such that the child would benefit from continuing the relationship; and (3) terminating the relationship "would be detrimental to the child even when balanced against the countervailing benefit of a new, adoptive home." (*In re Caden C.*, *supra*, 11 Cal.5th at p. 636; see *id*. at p. 630 ["[t]he language of this exception, along with its history and place in the larger dependency scheme, show that the exception applies in situations where a child cannot be in a parent's custody but where severing the child's relationship with

the parent, even when balanced against the benefits of a new adoptive home, would be harmful for the child"].) When the benefits of a stable, adoptive, permanent home outweigh the harm the child would experience from the loss of a continued parent-child relationship, the court should order adoption. (*Id.* at p. 634.)

We review the juvenile court's findings as to whether the parent has maintained regular visitation and contact with the child and the existence of a beneficial parental relationship for substantial evidence. (*In re Caden C.*, *supra*, 11 Cal.5th at pp. 639-640; see *In re R.V.* (2015) 61 Cal.4th 181, 200-201 ["[t]here is, however, no single formulation of the substantial evidence test for all its applications"; where a party fails to meet its burden on an issue in the juvenile court, "the inquiry on appeal is whether the weight and character of the evidence . . . was such that the juvenile court could not reasonably reject it"].) We review the third step—whether termination of parental rights would be detrimental to the child due to the child's relationship with his or her parent—for abuse of discretion. (*Caden C.*, at p. 640.)

> b. *The court did not abuse its discretion in concluding termination of parental rights would not be detrimental to Isaiah*

At the threshold, E.T. and the Department dispute whether the juvenile court made any findings as to E.T.'s regular visitation with Isaiah. E.T. insists she carried her burden to demonstrate regular visitation with Isaiah within the unique circumstances presented by her depleted financial resources and the COVID-19 pandemic and by showing regular and consistent telephone contact with Isaiah; and, she insists, the court made no

contrary findings at the hearing, despite the findings in the minute order. (See *In re T.G.* (2020) 58 Cal.App.5th 275, 298, fn. 20 [noting that minute orders in the case had expressed findings that were never made at the hearing and that, on occasion, were in direct conflict with the statements reported].) The Department, in contrast, emphasizes the court's express findings during the section 388 hearing concerning a lack of regular visitation as well as findings in the court's minute order from the section 366.26 hearing that E.T. did not demonstrate regular visitation.

While the Department has the better argument, we need not resolve the parties' dispute on that question. Even if E.T. had demonstrated regular visitation under the unique circumstances of the COVID-19 pandemic, the court, carefully weighing E.T.'s expressed commitment to maintaining her sobriety with the assistance of a formal program and Isaiah's statements that he did not want to be adopted if it meant losing contact with E.T. against evidence that Isaiah had been out of his mother's custody for nearly half his life and was thriving in the care of his prospective adoptive parent, found the stability and permanency of adoption far outweighed any benefit to him that might exist if parental rights were preserved. That finding was well within the court's discretion.

## DISPOSITION

The juvenile court's May 13, 2021 orders denying E.T.'s section 388 petition and terminating parental rights are affirmed.


PERLUSS, P. J.


We concur:


SEGAL, J.


FEUER, J.